IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

TRACY TURNER                                                                                    PLAINTIFF

V.                                        NO. 3:22-CV-00041-JTK

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                                                  DEFENDANT

## ORDER

### I.   Introduction:

Plaintiff, Tracy Turner ("Turner"), applied for disability benefits on November 21, 2019, alleging a disability onset date of October 24, 2019. (Tr. at 13). The claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Turner's application on July 20, 2021. (Tr. at 25). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Turner has requested judicial review.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II.     The Commissioner's Decision:

The ALJ found that Turner had not engaged in substantial gainful activity since the alleged onset date of October 24, 2019.[2] (Tr. at 15). The ALJ found, at Step Two, that Turner had the following severe impairments: chronic obstructive pulmonary disease (COPD); obesity; non-stemi; pulmonary edema; hypertension; degenerative disc disease of the lumbar and cervical spines, status post (s/p) cervical fusion, 9/2016 at C4-C5 and C5-C6; agoraphobia; generalized anxiety disorder; and depression. *Id*.

After finding that Turner's impairments did not meet or equal a listed impairment (Tr. at 16-17), the ALJ determined that Turner had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations: (1) she can only occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (2) she can occasionally stoop, kneel, crouch, and crawl; (3) she can frequently reach overhead bilaterally; (4) she must avoid concentrated exposure to excessive vibration and must avoid moderate exposure to extreme heat, wetness, and humidity; (5) she must avoid irritants such

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

as fumes, odors, dust, gases, and poorly ventilated areas; (6) she can make simple, work-related decisions and can maintain concentration, persistence, or pace for simple tasks; (7) she can understand, remember, and carry out simple work instructions and procedures; (8) she can adapt to changes in the work setting that are simple, predictable, and easily explained; and (9) she can have occasional and superficial interpersonal contact. (Tr. at 19).

The ALJ found that Turner was unable to perform any of her past relevant work. (Tr. at 24). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Turner's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, including work as a small products assembler and a housekeeper (cleaner). (Tr. at 24-25). Therefore, the ALJ found that Turner was not disabled. *Id.*

### III.   Discussion:

A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the

record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B. Turner's Arguments on Appeal

Turner contends that the evidence supporting the ALJ's decision is less than substantial. She argues that: (1) the RFC did not fully incorporate her limitations; (2) the ALJ did not properly evaluate the opinion of counselor Julie Cox; (3) at Step Five, the ALJ left unresolved a potential conflict between the VE's testimony and

the Dictionary of Occupational Titles ("DOT"); and (4) the ALJ did not properly analyze Turner's subjective complaints.

Turner suffered from lung and heart problems, but she continued to smoke, despite her doctors' recommendations. (Tr. at 18-24, 62, 64, 101, 103-108). Doctors also recommended that she improve her diet and start exercising. Failure to follow a doctor's recommendation undermines a claim of disability. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). Additionally, objective testing did not reveal more than moderate conditions, and treatment was generally conservative (except for a 2016 fusion surgery, well before the relevant time-period). (Tr. at 18-24, 420-255, 541, 719-725). As well, no doctor placed any permanent physical restrictions on Turner. Moreover, Turner admitted she could perform daily activities, such as preparing meals, doing light chores, driving, shopping, and caring for her husband. (Tr. at 18-24, 243-244, 286-287, 1072). While she stated that she had to take breaks during these activities, the ability to perform tasks that would translate to a work setting undermine a claimant's assertions of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Turner also claimed that she suffered from disabling carpal tunnel syndrome, but there is scant evidence of treatment for that in the record, which Turner admits. (Doc. No. 10 at 31). Moreover, the ALJ did discuss carpal tunnel syndrome, when

5

he found it to be nonsevere, and an RFC for light work accounts for carpal tunnel syndrome. (Tr. at 16). See *Cypress v. Colvin*, 807 F.3d 948-951 (8th Cir. 2015).

From a mental standpoint, Tuner claimed she had problems stemming from anxiety, panic attacks, and depression. However, she did not require inpatient hospitalizations, was sometimes non-compliant with her prescribed psychiatric treatment, and experienced some improvement in symptoms when she did take her medications. (Tr. at 382-386, 808-810, 1039-1043).

Julie Cox, a counselor, saw Turner off and on during the relevant time-period. Cox filled out a medical source statement in January 2021, indicating that she would have significant limitations in many mental work functions. (Tr. at 1094-1096). The ALJ properly analyzed this opinion.[3] He found it unpersuasive, giving good reasons for that determination. (Tr. at 23). He said that it was inconsistent with generally benign mental status examinations and also unsupported by Cox's own treatment

---

[3] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017*); Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 U.S. Dist. LEXIS 110370 at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

notes. *Id*. He also referenced Turner's ability to perform daily activities and her positive response to treatment. *Id*. The ALJ fulfilled his duty with respect to this opinion.

Moreover, the RFC for simple tasks with limited interpersonal contact accounted for any mental limitations.[4] (Tr. at 18-19). The ALJ specifically acknowledged some of Turner's issues with mental illness. (Tr. at 21-22). He then observed that Turner had generally normal mental status examinations, and again, she could perform some daily activities. She also graduated from high school and acquired a word-processing certificate. (Tr. at 36-47).

The VE, relying on his experience and the DOT, identified the jobs of small products assembler and housekeeper (cleaner) when the ALJ asked the VE if there were jobs Turner could perform at Step Five of the required analysis. (Tr. at 25). The first job has a reasoning level of 2, the second job has a reasoning level of 1.[5] While Turner claims that the RFC for simple work would not allow her to perform the mental requirements of these jobs, reasoning levels 1 and 2 jobs are the simplest type

---

[4] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).

[5] https://occupationalinfo.org/70/706684022.html.

of work available.[6] And the VE identified 110,000 such jobs, for just the housekeeper position, that are available in the national economy.[7] (Tr. at 25). There was no unresolved conflict at Step Five.

Finally, the ALJ properly considered Turner's subjective complaints.[8] He discussed objective medical findings, Turner's daily activities, her noncompliance with medications, her continued smoking habit, and the lack of permanent restrictions placed on Turner by any doctors. (Tr. at 15-23).

## IV.  Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC for light work fully incorporated Turner's credible impairments, and the ALJ properly analyzed medical opinions. He did not err at Step Five and he

---

[6] An ALJ has an affirmative duty to ask about any possible conflict between the VE's testimony and the DOT before relying on that testimony to support his findings. Soc. Sec. Ruling ("SSR") 00-4p (2000), *2-4, 2000 SSR LEXIS 8. The VE must provide sufficient explanation for his testimony. *Id.*

[7] The Eighth Circuit has held that "as few as 10,000 national jobs [is] a sufficient number to constitute significant national work." *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997).

[8] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted). While Turner says that the ALJ failed to mention her work history, this is inaccurate. (Tr. at 15, 24, 36-39).

fully discussed Tuner's subjective complaints. The finding that Turner was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 16th day of November, 2022.

_____
UNITED STATES MAGISTRATE JUDGE